


FILED
SEP 19 2017
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) Case No. **17 CR 103 JED** |
|---|---|
| Plaintiff, | ) **INFORMATION** |
| v. | ) [COUNTS 1 through 3: Bank Fraud - 18 U.S.C. § 1344; Forfeiture Allegation: 18 U.S.C. § 982(a)(2)(A) – |
| BLAKE BRIAN FERGUSON, | ) Bank Fraud Forfeiture Allegation; COUNT 4: Unlawful Monetary |
| Defendant. | ) Transaction - 18 U.S.C. § 1957(a)] |

THE UNITED STATES ATTORNEY CHARGES:

<u>COUNTS ONE THROUGH THREE</u>
[18 U.S.C. § 1344]

1. From in or about January 2013 to in or about September 2015, in the Northern District of Oklahoma and elsewhere, the defendant, **BLAKE BRIAN FERGUSON** ("**FERGUSON**") knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, that is, Firstar Bank, N.A. ("Firstar"), and to obtain any of the moneys, funds, credits, assets, and other property owned by, and under the custody and control of, Firstar by means of materially false and fraudulent pretenses, representations and promises ("the Scheme"), as described below:

<u>The Scheme</u>

2. It was part of the Scheme that **FERGUSON** served as a Senior Vice President of Firstar, a financial institution located in the Northern District of Oklahoma and the depository accounts of which were insured by the Federal Deposit Insurance Corporation. As part of his duties, **FERGUSON** managed loan portfolios, especially

Firstar's more complex and substantial loans, but **FERGUSON** was prohibited from making loans to himself in any amount without the disclosure of such transactions to the directors of the bank.

3. It was further part of the Scheme that, from in or about 2008 or 2009, **FERGUSON** would and did engage in gambling activities, which escalated in or about 2013 and caused him to accumulate substantial amounts of gambling debt.

4. It was further part of the Scheme that **FERGUSON** would and did pay his gambling debts by fraudulently causing increases to Firstar customer lines of credit, advances of customer loan proceeds, approvals of customer account overdrafts, and draws on funds from customer accounts, all of which transactions enabled him to siphon moneys illegally from the bank to pay his personal gambling debts.

5. It was further part of the Scheme that **FERGUSON** would and did make false statements in Firstar's loan documentation about the purpose of loans that he fraudulently authorized, thereby knowingly concealing from the bank that the real purpose of the loans was to provide himself with funds with which he could pay his gambling debts and that the real beneficiary of the loan proceeds was himself and, ultimately, his bookies, in particular as to Loan Number xxxx6358.

6. It was further part of the Scheme that **FERGUSON** would and did fraudulently authorize loans based on fake collateral, including non-existent accounts receivable, in particular as to Loan Number xxxx6886.

7. It was further part of the Scheme that **FERGUSON** would and did process fraudulent loans and lines of credit in amounts that he could approve unilaterally, as

Firstar's Senior Vice President, in order to conceal his unlawful acts from the oversight of Firstar's loan committee.

## The Execution of the Scheme

8. On or about the dates stated below, in the Northern District of Oklahoma, for the purpose of executing the Scheme and attempting so to do, **FERGUSON** knowingly caused the following acts:

| Count | Date | Means of Execution | Amount Involved |
|---|---|---|---|
| One | 02/20/15 | Wire transfer of Firstar Loan Number xxxx6358 proceeds to account of borrower J.J. at First Fidelity Bank, N.A., Oklahoma City, Oklahoma ("FFB") | $110,000 |
| Two | 07/17/15 | Overdraft of $27,213.67 in Firstar account of customer J.S.'s company to fund Firstar Cashier's Check Number xxxx3329 | $100,000 |
| Three | 07/21/15 | Credit of Firstar Loan Number xxxx6886 proceeds to Firstar account of borrower J.S.'s company | $100,000 |

All in violation of Title 18, United States Code, Section 1344.

## BANK FRAUD FORFEITURE ALLEGATION
## [18 U.S.C. § 982(a)(2)(A)]

The allegations contained in Counts One through Three of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A).

Upon conviction of the bank fraud scheme alleged in Counts One through Three of this Information, as part of his sentence, the defendant, **BLAKE BRIAN FERGUSON**, shall forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such scheme. A criminal forfeiture money judgment shall also be entered in a sum of money in an amount of at least $196,560, representing proceeds obtained as a result of the bank fraud scheme.

Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 982(a)(2)(A).

# COUNT FOUR
## [18 U.S.C. § 1957(a)]

10. The allegations of Counts One through Three of this Information are incorporated in this Count by reference.

11. On or about February 20, 2015, in the Northern District of Oklahoma and elsewhere, **FERGUSON** knowingly engaged in a monetary transaction in criminally derived property, of a value greater than $10,000 and which was derived from specified unlawful activity, that is, bank fraud, a violation of Title 18, United States Code, Section 1344, by causing the presentation to Commerce Bank of Tulsa, Oklahoma, of a check drawn on J.J.'s FFB account and payable to **FERGUSON**'s bookie in the amount of approximately $81,000.

12. Commerce Bank of Tulsa, Oklahoma, was a financial institution which was engaged in, and the activities of which affected, interstate commerce and the depository accounts of which were insured by the Federal Deposit Insurance Corporation.

All in violation of Title 18, United States Code, Section 1957(a).

Respectfully submitted,

LORETTA F. RADFORD
ACTING UNITED STATES ATTORNEY

KEVIN C. LEITCH
Assistant United States Attorney